[Crim. No. 300.  Fourth Appellate District.—June 24, 1936.]

In the Matter of the Petition of PAUL BRUNS for a Writ of Habeas Corpus.

Donald MacKay for Petitioner.

Thomas Whelan, District Attorney, and Seymour W. Wurfel, Deputy District Attorney, for Respondent.

TURRENTINE, J., *pro tem.*—It appears that petitioner herein having been duly subpoenaed, did on the 16th day of December, 1935, appear as a witness before the grand jury of San Diego County for the year 1935, then in session at the San Diego County courthouse in the city, township, and county of San Diego, and which was then engaged in an investigation to determine whether one Edgar Dudley had feloniously conspired with others to bribe a public official to wit, the district attorney of San Diego County. The petitioner having been first lawfully sworn to testify and it being material to this inquiry to learn what funds of money Dudley had at his command and who furnished money to him for the alleged purpose of bribing the district attorney of San Diego County, petitioner was interrogated by the deputy district attorney advising said grand jury and made reply to said questions as follows: "Q. What is your name? A. Paul Bruns. Q. What is your profession? A. Attorney. Q. State whether or not you are the attorney for Edgar Dudley. A. I am. Q. State whether or not you gave Mr. LaBlanc $100 to deliver to Mr. Dudley some time ago. A. I refuse to answer. Q. On what ground? A. On the ground of professional privilege. Q. You know the law as well as I do, that where one person has come in and given you a message to give to a third person, that is not privileged. I will present the law to you if you want me to get it. I think you know it as well as I do—that the only communication that is privileged between attorney and client is when the client speaks to him privately as his attorney. That when the client, no matter who he may be, gives you a message to give to a third person, no matter who it may be, that conversation is not privileged. And certainly the act of delivery of

money is not a privileged communication. Now, I will put the question to you again; did you deliver $100 to this Mr. LaBlanc to give to Mr. Dudley? A. I refuse to answer. Q. On what ground? A. On the ground of professional privilege. Q. Are you the attorney of Mr. LaBlanc? A. I refuse to answer. Q. Have you talked to Mr. LaBlanc? A. I have. Q. What was the gist of your conversation? A. I refuse to answer. Q. On what ground, now? A. Professional privilege. Q. Now, let's get this clear, so that we can go before the Superior Court and will know where we stand. Do you state to this Grand Jury that you are his attorney? A. Well, I refuse to answer that question, also on the same ground. Q. Did you receive any money from any persons during this past year to give to Dudley? A. I refuse to answer on the ground of professional privilege. Q. Do you state that the individuals who gave you any money, if they did, were your clients? A. I refuse to answer, on the same ground. Q. Did you receive that money from individuals in San Diego? A. I refuse to answer, on the same ground. Q. Did you receive that money from an individual in Los Angeles? A. I refuse to answer, on the same ground. Q. Were you employed by any association or individuals to give Dudley money to carry on certain activities in San Diego? A. I refuse to answer, on the same ground. Q. You refuse to tell us whether or not you were attorney for these individuals; is that correct—those who gave you money? A. I don't think I heard the last part of the question. Q. You refuse to tell us whether or not the individuals who gave you the money are your clients? A. Yes, I do. Q. Did you receive some money from Mr. C. O. Richards of this city? A. I refuse to answer on the ground of professional privilege. Q. Are you the attorney of Mr. Richards, or were you at any time? A. I refuse to answer that question, on the ground of professional privilege.''

No summary contempt proceeding was instituted against petitioner in the Superior Court in and for the County of San Diego, for these refusals to testify before the grand jury. The following day, however, on December 17, 1935, a criminal complaint was filed in the Justice's Court of San Diego Township, charging petitioner with violating subsection 6 of section 166 of the Penal Code, a misdemeanor. The foregoing facts, including a copy of the proceedings, were duly set forth in the amended complaint on which defendant was

4

tried, as well as a charge in the wording of the statute. Defendant having waived a trial by jury and trial within the statutory time, was tried by the court in department four of said justice's court on February 5, 1936, and found guilty of the offense as charged. Petitioner waived time for pronouncement of judgment and was on February 14, 1936, sentenced to serve sixty days in the county jail. At this time the 1935 San Diego County grand jury had not been discharged and was still in session.

Thereafter petitioner perfected an appeal, from said judgment and sentence, to the Superior Court in and for the County of San Diego following the procedure established by sections 1466, 1467, 1468 of the Penal Code. Department three of said superior court on May 25, 1936, affirmed the judgment and sentence of the justice's court and petitioner was ordered into custody thereunder. Thereafter on May 27, 1936, petitioner surrendered his person to the sheriff of San Diego County and immediately filed in this court his petition for a writ of *habeas corpus* and secured his release pending decision thereon.

■ The justice's court has jurisdiction to try a criminal action for contempt of a superior court. (*In re Morris*, 194 Cal. 63 [227 Pac. 914].) ■ A grand jury is a judicial body. (*Ex parte Sternes*, 82 Cal. 245 [23 Pac. 38]; *Irwin v. Murphy*, 129 Cal. App. 713 [19 Pac. (2d) 292].) Grand jurors are officers of the court. (*In re Gannon*, 69 Cal. 541 [11 Pac. 240]; *Irwin v. Murphy, supra.*) Contempt of a grand jury is a contempt of court. (*Matter of Tyler*, 64 Cal. 434 [1 Pac. 884]; *In re Shuler*, 210 Cal. 377 [292 Pac. 481].)

■ A recital of the facts herein is made very largely in the wording of the amended complaint and it demonstrates that it states a public offense. (Pen. Code, sec. 166, subd. 6.)

Petitioner concedes the materiality of the questions and that they were not privileged.

■ Petitioner was not taken before the superior court and by the superior court ordered to answer the questions. He claims that these facts are jurisdictional and as they were not pleaded or proved that the amended complaint does not state a public offense and that he was convicted on insufficient evidence, basing the claims on the provisions of Code of Civil Procedure, sections 1209–1222, and Code of Civil Procedure, section 1991, and numerous cases considering

and construing these code sections. We think it clear from a review of *Ex parte Karlson,* 160 Cal. 378 [117 Pac. 447, Ann. Cas. 1912D, 1334], and *In re Morris,* 194 Cal. 63 [227 Pac. 914], that these code sections have no bearing on a prosecution for contempt under Penal Code, section 166. In *Ex parte Karlson, supra,* on page 383, it is said: ''It necessarily follows that the Penal Code has no application to a civil contempt, and that, the question whether the particular act is punishable as a criminal contempt or not, under section 166 of the Penal Code, is immaterial to any inquiry arising in a contempt proceeding under section 1209. (Code Civ. Proc.)'' We think the converse equally true.

Petitioner does not challenge the sufficiency of the evidence to prove the allegations of the amended complaint. It thus appearing that the amended complaint states a public offense, that the justice's court had jurisdiction, and, that the conviction is based on sufficient evidence, the writ is dismissed and the petitioner remanded.

Barnard, P. J., and Marks, J., concurred.